**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **GARY WAYNE RUSSELL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 09-CV-511-GKF-PJC |
| ) | |
| **PAUL LANIER; WILLIAM BURKETT;** ) | |
| **CYNTHIA FROST,** ) | |
| ) | |
| **Defendants.** ) | |

**OPINION AND ORDER**

This is a 42 U.S.C. § 1983 civil rights action commenced by Plaintiff, appearing *pro se* and proceeding *in forma pauperis*. Plaintiff filed his complaint (Dkt. # 1) on August 11, 2009. Defendants Burkett and Frost filed a motion for summary judgment or, in the alternative, motion to dismiss and brief in support (Dkt. # 18). Defendants Burkett and Frost also filed, under seal,[1] exhibits numbered 5-12 (Dkt. # 19), in support of their motion. Plaintiff filed responses (Dkt. #s 22 and 26) to Defendants' motion. Defendants filed a reply (Dkt. # 27). For the reasons discussed below, Defendants' motion for summary judgment shall be granted.

In addition, the Court's records reflect that Plaintiff failed to effect service of process as to Defendant Lanier within the 120-day time period provided by Fed. R. Civ. P. 4(m). By Order filed January 7, 2010, the Court directed Plaintiff to file a response demonstrating good cause for his failure to serve Defendant Lanier within the prescribed time period. Plaintiff failed to file a response as ordered by the Court. Although Plaintiff did submit a new summons and USM-285 Marshal

---

[1] Exhibits 5-12 contain personal identifiers and, for that reason, were filed under seal. See Dkt. # 19.

service form for Defendant Lanier, the Court finds he has failed to demonstrate good cause for his failure to serve Defendant Lanier within the prescribed time. In addition, the grounds for entry of summary judgment discussed herein are equally applicable to Defendant Lanier. Thus, even if Plaintiff had effected service as to Defendant Lanier within the time period provided by Fed. R. Civ. P. 4(m), Defendant Lanier would be entitled to entry of summary judgment pursuant to the terms of this Opinion and Order. Therefore, Plaintiff shall not be granted additional time to serve Defendant Lanier. Defendant Lanier shall be dismissed without prejudice from this action based on Plaintiff's failure to effect timely service of process.

The Court also notes that January 20, 2010, Plaintiff filed a "motion for subpoena" (Dkt. # 25), requesting that Defendant Burkett produce "any and all 'weekly progress notes' beginning from March 01, 09, to the present date." See Dkt. # 25. The record provided by Defendants and sent to Plaintiff contains "weekly progress notes" encompassing the period from Plaintiff's admission to the Oklahoma Forensic Center ("OFC") through November 11, 2009. See Dkt. # 19, Ex. 5. Thus, the record already contains "weekly progress notes" from March 1, 2009, through November 11, 2009. Plaintiff makes no allegation that events occurring between November 11, 2009, and January 20, 2010, are relevant to his claims. Therefore, Plaintiff's motion for subpoena shall be denied.

***BACKGROUND***

Plaintiff is in custody of the State of Oklahoma pursuant to an adjudication of "not guilty by reason of insanity" ("NGRI") and has been placed at OFC for treatment. In his civil rights complaint (Dkt. # 1), Plaintiff identifies three defendants: Paul Lanier, William Burkett, and Cynthia Frost. He identifies Defendants Lanier and Burkett as "Director of Clinical Services/Director" and Defendant Frost as "Nurse, Oklahoma Forensic Center." In the "Nature of Case" section of the

complaint, Plaintiff writes "court ordered to OFC for treatment. Yet, I am being denied treatment. Also, I am in medical need for the treatment of Hep.C. Yet, I am being denied." See Dkt. # 1. He asserts three claims, as follows:

> Count I:   Paul Lanier, and or, Bill Burkett have denied me the treatment process (not guilty by reason of insanity) in which I was ordered by the court to receive.
>
> Count II:  Paul Lanier, and or, Bill Burkett, have denied me medical help for, Hep. C.
>
> Count III: Mail rifling.

(Dkt. # 1). In his request for relief, Plaintiff asks for "4.9 million dollars (4,900,000)." See Dkt. # 1. Plaintiff alleges the following facts as to each count:

> Count I:   The plaintiff's admission date into the OFC was 6-12-08 where the plaintiff was timely processed into the NGRI program. However, the plaintiff was removed from the NGRI program within one week after he was placed on the NGRI program. The plaintiff contends he was removed from the NGRI program as punishment. Three reasons to help explain this is [sic]:
> 1. The medical records, if any, do not support any cause for action towards the plaintiff as a specific reason. The defendants vaguely use the term, stable, to support an otherwise unsupportable reason toward removing the plaintiff from the NGRI treatment program.
> 2. The medical records show no modifications in the plaintiff's medications to support any behavioral abnormalities at the time the plaintiff was pronounced to be too unstable for the NGRI program.
> 3. At this time, 3-30-09, the plaintiff remains on the Admission Wing where he was placed, which along with the other criteria stated in the plaintiff's petition does hereby substantiate cruel and unusual punishment towards the plaintiff by the defendants named herein.
>
> Count II:  Plaintiff has received no medical treatment pertaining to this issue. Yet the plaintiff is required to take thousands of milligrams of drugs per day to treat an alleged psychological disorder. Given these circumstances the plaintiff does hereby state that he is no more than a laboraty [sic] rat and is being experimented on while his health is failing. This gross neglect on behalf of the defendants does constitute cruel and unusual punishment towards the plaintiff.

       Count III:      On 7-08-08, Plaintiff was mailed over fifty pages of legal material, which Cynthia Frost withheld from the plaintiff for reasons unknown. Cynthia Frost has admitted guilt in an un-sworn way.

(Dkt. # 1).

In response to the complaint, Defendants Burkett and Frost filed a motion for summary judgment or, in the alternative, motion to dismiss (Dkt. # 18). Plaintiff filed responses (Dkt. #s 22 and 26) to Defendants' motion. Defendants filed a reply (Dkt. # 27). Defendants and Plaintiff have submitted matters outside the pleading. Given that the Court considers these materials in ruling upon Defendants' motion, the Court treats Defendants' motion as a motion for summary judgment and not a motion to dismiss. See Fed. R. Civ. P. 12(b); Paper, Allied Indus., Chem. & Energy Workers Int'l Union v. Continental Carbon Co., 428 F.3d 1285, 1292 (10th Cir. 2005). The motion to dismiss shall be declared moot.

## *UNCONTROVERTED FACTS*

The record before the Court demonstrates that after being found NGRI in McCurtain County District Court, Case No. CF-2007-182, see Dkt. # 18, Exs. 1 and 2, Plaintiff was admitted to OFC on June 12, 2008. See Dkt. # 19, Ex. 5. He was initially housed in the Admissions Unit. On June 24, 2008, he was transferred to the NGRI Unit. On July 3, 2008, he was returned to the Admissions Unit because of his "problematic" behavior. See id. During the time he was housed in the Admissions Unit, he received treatment for his psychological conditions as if he were housed in the NGRI Unit. See Dkt. # 18, Exs. 3 and 4; Dkt. # 19, Exs. 5, 6, 7, 8.

On June 20, 2008, the results of Plaintiff's Hepatitis C screening were noted to be positive. See Dkt. # 19, Ex. 10 at 6. The medical records reflect that his request for Hepatitis C treatment was evaluated in July and August 2008 and medical personnel determined he was not a candidate for

treatment due to a low platelet count. See, e.g., Dkt. # 19, Ex. 5 at 6; Dkt. # 19, Ex. 10 at 7. On May 26, 2009, he was taken to the lab for the purpose of obtaining a "Hep. C profile." See Dkt. # 19, Ex. 5 at 12. On August 18, 2009, an infectious disease specialist, Dr. Okwuasaba, examined Plaintiff and determined he was a "high risk for Hep C treatment." See Dkt. # 19, Ex. 10 at 9. In his report, see Dkt. # 19, Ex. 11, Dr. Okwuasaba confirmed earlier determinations that Plaintiff is not a candidate for Hepatitis C treatment.

Patients at OFC receive mail. Under OFC's mail policy, the patient opens his mail in front of a staff member who ensures that there is no contraband. See Dkt. # 18, Ex. 3 at ¶ 8. Staff receives mail containing legal documents from the courts or other sources. Id. at ¶ 9. A document from the court is typically attached to the patient's medical file where it can be reviewed by the treating physician. Id. During the first week of July 2008, a manilla envelope containing legal material for Plaintiff arrived at OFC. Id. at ¶ 10. Defendant Cynthia Frost mistakenly attached the legal material to Plaintiff's medical file. See id.; Dkt. # 19, Ex. 12. After Plaintiff inquired about the whereabouts of legal mail he had expected to receive, Defendant Frost realized her mistake and immediately returned the legal mail to Plaintiff. See Dkt. # 18, Ex. 3 at ¶ 11.

## *DISCUSSION*

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. Jiron v. City of Lakewood, 392 F.3d 410, 414 (10th

Cir. 2004); Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990) (citing Gray v. Phillips Petroleum Co., 858 F.2d 610, 613 (10th Cir. 1988). "However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Applied Genetics, 912 F.2d at 1241 (citing Celotex Corp v. Catrett, 477 U.S. 317, 324 (1986)). A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are "facts which might affect the outcome of the suit under the governing law." Id.  Although the court cannot resolve material factual disputes at summary judgment based on conflicting affidavits, Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991), the mere existence of an alleged factual dispute does not defeat an otherwise properly supported motion for summary judgment. Anderson, 477 U.S. at 247-48. Only material factual disputes preclude summary judgment; immaterial disputes are irrelevant. Hall, 935 F.2d at 1111. Similarly, affidavits must be based on personal knowledge and set forth facts that would be admissible in evidence. Id. Conclusory or self-serving affidavits are not sufficient. Id. The trial judge shall grant summary judgment if the evidence, viewed in the light most favorable to the non-movant, fails to show that there exists a genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Anderson, 477 U.S. at 250. When a plaintiff is *pro se*, the Court will construe the plaintiff's pleadings liberally for purposes of summary judgment. Haines v. Kerner, 404 U.S. 519, 520 (1972).

**B. Plaintiff's claims**

    **1. Due process claim**

In Count I, Plaintiff claims that Defendants, acting under the color of state law, have subjected him to "cruel and unusual punishment" by failing to provide NGRI treatment. See Dkt. # 1 at 4-5, 6. It is well-established that conditions of confinement affecting prisoners' health and safety are governed by the "cruel and unusual punishment" clause of the Eighth Amendment. See, e.g., Farmer v. Brennan, 511 U.S. 825, 834 (1994). In this case, the Court has previously determined, see Dkt. # 5, that Plaintiff is not a prisoner. He is presently detained at OFC for the purpose of receiving mental health treatment based on a finding of NGRI. Because Plaintiff is not a prisoner, Eighth Amendment protections do not apply. Nonetheless, the Due Process Clause of the Fourteenth Amendment protects pretrial detainees from the imposition of conditions of confinement that constitute "punishment." Bell v. Wolfish, 441 U.S. 520 (1979). "Punishment" may be loosely defined as "a restriction or condition that is not reasonably related to a legitimate goal-if it is arbitrary or purposeless." Id. at 539. "Reasonably related" means that the restriction is (1) rationally related to a legitimate governmental purpose, and (2) not excessive in relation to that purpose. Id. at 561.

The Court finds that the due process analysis applicable to pretrial detainees is analogous to that applicable to the conditions of Plaintiff's detention at OFC for mental health treatment. The determination of whether a condition of pretrial detention amounts to punishment turns on whether the condition is imposed for the purpose of punishment or whether it is incident to some other legitimate government purpose. Bell, 441 U.S. at 538. If an act by a facility official, such as placing the detainee in segregation, is done with an intent to punish, the act constitutes unconstitutional pretrial punishment. Id. Similarly, "if a restriction or condition is not reasonably related to a legitimate [governmental] goal-if it is arbitrary or purposeless-a court permissibly may infer that the

purpose of the governmental action is punishment." Id. at 539. On the other hand, restraints that "are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting." Id. at 540. Obviously, "ensuring security and order at the institution is a permissible nonpunitive objective, whether the facility houses pretrial detainees, convicted inmates, or both." Id. at 561.

The issue in this case is whether the actions of Defendants in removing Plaintiff from the NGRI Unit and placing him on the Admissions Unit were taken in violation of Plaintiff's rights under the Fourteenth Amendment. In moving for summary judgment, Defendants provide evidence demonstrating that Plaintiff was removed from the NGRI Unit and placed on the Admissions Unit because of his behavior. See Dkt. # 18, Exs. 3 and 4; Dkt. # 19, Ex. 5 at 4. They explain that the "Admissions Unit is better staffed and has higher security, and is therefore better able to protect the NGRI patient from being a danger to himself or others." See Dkt. # 18 at 8; see also Dkt. # 18, Exs. 3 and 4. They also provide evidence supporting their assertion that during the time Plaintiff was housed on the Admissions Unit, he received all of the treatment for his psychological conditions that a person in the NGRI program is entitled to receive. See Dkt. # 18, Ex. 3 at ¶ 6, Ex. 4 at ¶¶ 12, 13.

In response to the motion for summary judgment, Plaintiff does not controvert the evidence provided by Defendant Burkett concerning psychological treatment received by Plaintiff while he was housed on the Admissions Unit. See Dkt. # 26. For that reason, Defendants are entitled to entry of summary judgment as to the claim asserted in Count I of the complaint. However, while Plaintiff appears to concede that when he was housed in the Admissions Unit, he participated in or had access to the same mental health treatment programs available to those housed in the NGRI Unit, he asserts for the first time that he was deprived of "privileges" afforded patients housed on the NGRI Unit.

See id. Specifically, he complains that he suffered restricted access to (a) outdoor activities, (b) weight room activities and electronic equipment, (c) pen and pencil possession, restricted to thirty minute use, and (d) various groups, work therapy, process group, arts and crafts, etc. See Dkt. # 26.

Plaintiff has failed to provide summary judgment evidence demonstrating that he was removed from the NGRI Unit and placed on the Admissions Unit as "punishment". The uncontroverted evidence provided by Defendants demonstrates that Plaintiff displayed problematic behavior and, for that reason, was moved to the more secure Admissions Unit. Thus, the evidence demonstrates that Plaintiff's removal from the NGRI Unit to the Admissions Unit was rationally related to the legitimate governmental purpose of insuring institutional security. Nothing suggests that Plaintiff's placement on the Admissions Unit was excessive in relation to that purpose. Even if being housed on the Admissions Unit subjected Plaintiff to more restrictions, no evidence suggests that the decision to house Plaintiff on the Admissions Unit was purposefully inflicted as punishment. In addition, to the extent Plaintiff argues he was deprived of liberty without due process when he was removed from the NGRI Unit to the Admissions Unit, the Court finds he has failed to establish a liberty interest in being assigned to a particular housing unit within the treatment facility. Cf. Templeman v. Gunter, 16 F.3d 367, 369 (10th Cir. 1994). Therefore, the Court finds no genuine issue of material fact as to the constitutionality of Plaintiff's placement on the Admissions Unit and concludes that Defendants are entitled to judgment as a matter of law on Count I.

**2. Denial of adequate medical care for Hepatitis C**

In Count II, Plaintiff complains that he has not received treatment for Hepatitis C. It is well-established that "[a] medical staff's deliberate indifference to serious medical needs of prisoners constitutes a violation of the Eighth Amendment." Green v. Branson, 108 F.3d 1296, 1303 (10th Cir.

1997) (quotation omitted). As discussed above, Plaintiff is not a prisoner. However, Plaintiff's status is analogous to that of a pretrial detainee. Where a plaintiff is a pretrial detainee, Eighth Amendment standards provide the benchmark for conditions of confinement claims, including claims of inadequate medical care. Craig v. Eberly, 164 F.3d 490, 495 (10th Cir. 1998). The deliberate indifference standard has two components:

> an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that the offending officials act with a sufficiently culpable state of mind. With regard to the subjective component, allegations of inadvertent failure to provide adequate medical care or of a negligent diagnosis simply fail to establish the requisite culpable state of mind.

Miller v. Glanz, 948 F.2d 1562, 1569 (10th Cir. 1991) (citations and quotations omitted). Claims of medical negligence in a diagnosis or choice of therapy are not actionable under § 1983. See Green, 108 F.3d at 1303. Stated another way, "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." Perkins v. Kan. Dep't of Corrections, 165 F.3d 803, 811 (10th Cir. 1999); see also Self v. Crum, 439 F.3d 1227 (10th Cir. 2006). "[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." Oxendine v. Kaplan, 241 F.3d 1272, 1277 n.7 (10th Cir. 2001) (internal citations and quotation marks omitted). A delay in medical care only constitutes a constitutional violation where the plaintiff can show that the delay resulted in substantial harm. Id. at 1276.

In support of their motion for summary judgment, Defendants provide evidence demonstrating Plaintiff's Hepatitis C diagnosis as well as assessments by multiple medical professionals that Plaintiff is not a candidate for treatment. See Dkt. # 18, Ex. 4; Dkt. # 19, Exs. 10 and 11. In response to the motion for summary judgment, see Dkt. # 26, Plaintiff fails to controvert

10

Defendants' summary judgment evidence demonstrating that he has not received treatment for Hepatitis C because of complicating medical conditions. He does, however, complain that he was not seen by a doctor until fourteen (14) months after his diagnosis. Id. The record establishes that on July 31, 2008, or only one month after his diagnosis, medical personnel took action on Plaintiff's request that he be treated for Hepatitis C and determined that he was "not a candidate secondary to low platelet count." See Dkt. # 19, Ex. 10 at 7. When he was seen by an infectious disease specialist, fourteen months after his diagnosis, his status had not changed: he was not a candidate for treatment. Therefore, any delay in seeing a specialist did not result in substantial harm to Plaintiff relative to a determination of his eligibility for drug treatment.

Upon review of the summary judgment record in the light most favorable to Plaintiff, the Court finds Plaintiff has failed to demonstrate that any named Defendant acted with deliberate indifference to a serious medical need. Plaintiff has provided no evidence controverting the summary judgment evidence provided by Defendants. Plaintiff was evaluated and determined not to be a candidate for Hepatitis C treatment. To the extent Plaintiff complains that he was not promptly evaluated by a specialist, he has failed to demonstrate that he suffered any harm as a result of any delay in evaluation. Oxendine, 241 F.3d at 1276. At most, the record before the Court demonstrates that Plaintiff simply disagreed with the evaluations he received. As stated above, differences in judgment regarding appropriate medical diagnosis or treatment are not enough to state a deliberate indifference claim. Id. at 1277. Finding no genuine issue of material fact as to the adequacy of the medical care provided to Plaintiff, the Court concludes that Defendants are entitled to judgment as a matter of law on Count II.

### 3. Interference with mail

In Count III, Plaintiff asserts that Defendant Frost interfered one time with delivery of mail from his attorney. "The Supreme Court has made it clear that liability under § 1983 must be predicated upon a 'deliberate' deprivation of constitutional rights by the defendant. It cannot be predicated upon negligence." Woodward v. City of Worland, 977 F.2d 1392, 1399 (10th Cir. 1992) (citing City of Canton v. Harris, 489 U.S. 378, 389 (1989); Daniels v. Williams, 474 U.S. 327, 331 (1986); Davidson v. Cannon, 474 U.S. 344, 347 (1986)); see also Jojola v. Chavez, 55 F.3d 488, 490 (10th Cir. 1995); Archuleta v. McShan, 897 F.2d 495, 497 (10th Cir. 1990). In Smith v. Maschner, 899 F.2d 940 (10th Cir. 1990), the Tenth Circuit determined that a prison official's opening of an inmate's legal mail by accident did not give rise to a constitutional violation because it was an isolated incident and there was no evidence of improper motive or resulting interference with the inmate's right to counsel or access to courts. Maschner, 899 F.2d at 944; see also Jones v. Salt Lake County, 503 F.3d 1147, 1162-63 (10th Cir. 2007).

As his claim against Defendant Frost, Plaintiff complains of an isolated incident of mishandling of his legal mail. In her affidavit, see Dkt. # 18, Ex. 3, Defendant Frost explains that she "mistakenly believed" a manilla envelope addressed to Plaintiff contained legal documents related to Plaintiff's legal case. Based on that mistaken belief, she "took the documents out of the envelope, hole punched them, and placed them in Mr. Russell's chart." See id. at ¶ 10.  Once Mr. Russell made inquiries and she realized her mistake, she "immediately returned" the documents to Plaintiff. Id.

In his response (Dkt. # 22) to Defendants' motion for summary judgment, Plaintiff does not controvert the summary judgment evidence provided by Defendants.  He acknowledges that his

complaint is based on one incident of mishandling of his mail. He provides no evidence suggesting that Defendant Frost acted deliberately or with an improper motive. Nor does he suggest the existence of an ongoing problem, nor does he refute that the legal mail at issue has been returned to him. The uncontroverted summary judgment evidence provided by Defendants demonstrates that, at most, Defendant Frost was negligent in mishandling one piece of Plaintiff's mail. This was an isolated incident and with no evidence of improper motive by Defendant Frost. After viewing the evidence in the light most favorable to Plaintiff, the Court finds that there is no genuine issue of material fact, and the Defendant Frost is entitled to judgment as a matter of law on Count III.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. Defendants' motion for summary judgment (Dkt. # 18) is **granted**.

2. Defendants' motion to dismiss (Dkt. # 18) is **declared moot**.

3. Plaintiff's "motion for subpoena" (Dkt. # 25) is **denied**.

4. Defendant Lanier is **dismissed without prejudice** based on Plaintiff's failure to effect service as provided by Fed. R. Civ. P. 4(m).

5. A separate judgment shall be entered in this matter.

DATED THIS 5th day of April, 2010.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma